Two questions arise in this case.
One is, whether the complainant Carrie C. Hesselbrock is entitled to a claim against the estate of her deceased husband for $9,690, with interest from December 11th, 1928.
Decedent and his wife in 1919 purchased property in Montclair as tenants by the entirety. It is contended that the husband provided the money. This, however, makes no difference. SeeNeubeck v. Neubeck, 94 N.J. Eq. 167, in which the court held: *Page 340 
"It is suggested that the instant case differs from theO'Connell Case, for the reason that all of the purchase-money for the property was paid by the husband out of his earnings. But that, if true, is immaterial. Assuming that it was a gift by the husband to the wife, her title is as valid as if her interest was purchased out of her own funds."
In 1927 complainant joined with her husband in executing a mortgage to the First National Bank and Trust Company of Montclair, for $9,500. The husband received the entire proceeds. It is claimed that he expended the major part for the upkeep of the household. In this he was only doing his legal duty. On his death the executor refused to discharge the mortgage. The wife took over the claim, paid the bank the amount then owing, and demanded reimbursement on her husband's bond from the executor. This the executor refused. Whether complainant is considered as assignee of the bond or as surety for her husband, she is entitled to be repaid.
It is objected that the testimony of the complainant, with regard to the mortgage loan, is inadmissible. I ruled at the hearing that it is admissible. Under section 4 of the Evidenceact, the only party who could object to the testimony was the executor, and he did not do so. I think that under section 6 of the Evidence act, the evidence is admissible. This section reads:
"The complainant or petitioner in any action or proceeding of an equitable nature in any court, shall be a competent witness to disprove so much of the defendant's answer as may be responsive to the allegations contained in the bill of complaint or petition."
Complainant set up the allegations as to the mortgage, and defendant executor in his answer alleged that complainant for good and sufficient reasons and consideration to herself voluntarily joined with the decedent in said mortgage. Therefore, complainant's testimony was competent to disprove defendant's response to her allegations. Lanning v. Administrator ofLanning, 17 N.J. Eq. 228; Williams v. Vreeland's Executors,30 N.J. Eq. 576.
Complainant is entitled to payment by the defendant executor of $9,690, with interest from December 11th, 1928. *Page 341 
The second question is the construction of the last will of the said Louis B. Hesselbrock, in order to ascertain whether testator died intestate as to part of the income of the trust set up by the will. Counsel has summarized the facts to be considered, as follows:
Testator's will, made on May 22d 1928, only two months before his death, contained but one outright gift, i.e., a legacy of $10,000 to his wife, and then by paragraph fourth created a residuary trust, briefly summarized as follows:
(a) "To retain any of my said estate or to sell" for purposes of the trust.
(b and c) An annuity of $1,200 from the "income of my said estate" is to be paid to testator's daughter Janet upon the death of testator's widow or upon said Janet becoming nineteen years of age and until she becomes thirty years of age, unless she attends college. During said attendance, and annuity is increased to $2,000 "of said income."
(d) When Janet becomes thirty years of age, "the principal fund of my said estate" is to be applied as follows:
(1) Up to $60,000 is set apart for Janet when she becomes thirty years of age and shall be "paid to her with the same proportion of accrued interest" as follows: One-quarter thereof as she respectively becomes thirty years and thirty-five years of age, and one-half when she becomes forty years of age.
(2) The excess, if any, above $60,000 is to be divided into four equal parts and one of said parts paid to each of the testator's four children, Helen, Ethel, Catherine and Collins, "together with its pro rata share of any accumulated income from such excess."
(e) Provision is made that the descendants or survivors of deceased beneficiaries take the shares of those who die before becoming entitled thereto.
(f) An annuity of $1,250 "of said income" is to be paid to testator's son Collins if and during the time he attends college, with certain defeasance provisions if he leaves college.
Testator's entire estate consisted only of personal assets, amounting to approximately $93,000 and the residue totals *Page 342 
approximately $62,000. Testator's widow had no private estate and no assets other than the legacy aforesaid and the proceeds of a $12,000 insurance policy on her husband's life. At testator's death, the ages of his five children were: Helen, twenty-one years; Ethel, twenty years; Catherine, eighteen years; Collins, seventeen years, and Janet, eight years. All resided at home.
Janet is suffering from a malignant disease which requires constant medical attention. The wife is a semi-invalid, incapable of working. The only disposition of the corpus of the fund, it will be observed, is contingent on the following (paragraph fourth, subdivision d):
"When my said daughter Janet becomes thirty years of age I hereby direct my said trustees to use the principal fund of my said estate as follows: * * *."
In Gifford v. Thorn, 9 N.J. Eq. 702, the rule of construction in determining whether a corpus gift is vested or contingent is settled. This is the leading case and has been followed as recently as Carter v. Bugbee, 92 N.J. Law 390. In the Gifford Case the court said (at p. 705):
"Where the time specified in the bequest is annexed to the payment only, * * * the legacy vests immediately upon the death of the testator. * * * But where the time is annexed not to the payment only, but to the gift itself, as when the legacy is given to the legatee at twenty-one, or `if' or `when' he attains the age of twenty-one, the legacy does not vest until the legatee attains that age."
At page 708 the court said:
"But in the present instance * * * the whole estate, real and personal, is vested in the hands of the trustees, who are to receive the entire interest, rents and profits for the general purposes of the will. The legatee is to receive not the interest of the residuary legacy, but a maintenance and education from the general fund, in common with the other children of Jane Mary Thorn. Such a disposition of the estate can raise no presumption of an intention on the part of the testator that the legacy should vest immediately." *Page 343 
In the present case the time specified in the bequests of thecorpus is annexed not to the payment but to the gift. Therefore, the legacy is contingent. That being so, the income does not attach to the corpus to be accumulated and divided as part thereof when distributed. This rule is laid down inSandford v. Blake, 45 N.J. Eq. 247, where it was held (at p.251):
"* * * there being no directions for the accumulation of income to increase the corpus of the fund, the income accruing between the death of the surviving life-tenant and the death of Eleanor is undisposed of and falls into the residue. * * * A residuary bequest of personal estate carries not only everything not in terms disposed of, but everything that in the event turns out not to be well disposed of. A presumption arises in favor of the residuary legatee against every one except the particular legatee; for a testator is supposed to have given his personalty away from the former only for the sake of the latter. * * * The only contest that can arise is, whether the income so falling into the residue remains income or becomes principal."
The court goes on to say that the income remains income.
In law, the testator died intestate as to so much of the income as was not specifically appropriated by him under the trust provisions.
As a matter of practical construction, it seems entirely clear to me that the testator had no idea of having all the income held until the corpus was divided. The situation at testator's death was that he left a widow and children without any means of support. The youngest one, Janet, was eight years old and an invalid. I cannot conceive it to have been his idea that his wife and children should get no support for twenty-two years, until Janet becomes thirty years of age. To say that he intended them to go out and earn their own living is imputing a very unnatural feeling to a father. Moreover, what would become of Janet, who is unable to earn anything and is in need of medical care and treatment? I am of the opinion that he meant to have his family supported in so far as the income would do so. Otherwise, as *Page 344 
counsel says, Janet may as well perish as it is obvious that she cannot wait for support for twenty-two years.
If there be two constructions equally reasonable, if we consider the withholding of the entire income to be reasonable, one of which will work hardship to testator's family, and the other will make proper provision for them, a court of equity should be guided by their present needs and reach a normal conclusion. I will advise a decree in accordance with these conclusions.